Great Eastern Casualty Co. v. Solinsky.

GREAT EASTERN CASUALTY CO. *et al. v.* AMELIA SOLINSKY
*et al.**

(*Nashville.* December Term, 1923.)

INSURANCE. Damage to automobile held not due to collision.''

Where brakes on automobile were suddenly clamped on and car
skidded, reversing its position, and rear wheel collapsed, there was
no "collision," within meaning of insurance policy, there being
nothing in road but a little loose gravel.

Cases cited and approved: French v. Fidelity & C. Co., 135 Wis., 259;
Kelly v. Fidelity Mut. L. Ins. Co., 169 Wis., 274; London Guarantee
& Acc. Co. v. Sowards, 2 D. L. R., 495; Harris v. American Casualty
Co., 83 N. J. Law, 641; Universal Service Co. v. Am. Ins. Co. of
Newark, N. J., 213 Mich,, 523; Wetherill v. Williamsburgh City
Fire Ins. Co., 60 Pa. Super. Co., 37; Stix v. Travelers' Indemnity
Co. of Hartford, Conn., 175 Mo. App., 171; Hardenburgh v. Em-
ployers' Liability Assur. Corp., 78 Misc. Rep., 105; Columbia In-
surance Co. v. Chatterjee, 219 Pac., 102; Gans v. Columbia Ins. Co.,
123 Atl., 240; T. C. Power Motor Car Co. v. U. S. Fire Ins. Co., 223
Pac., 112; Young v. N. J. Ins. Co., 284 Fed., 492.

Cases cited and distinguished: Bell v. American Ins. Co., 173 Wis.,
533; N. J. Ins. Co. v. Young, 290 Fed., 155; Moblad v. Western In-
demnity Co., 53 Cal. App., 683; Continental Cas. Co. v. Paul, 209
Ala., 166; Ploe v. International Indemnity Co., 223 Pac., 327.

---

*On insurance on automobile against liability for damages to
another, see notes in 44 L. R. A. (N, S.), 77; 51 L. R. A. (N. S.), 584;
L. R. A. 1915E, 580, L. R. A. 1917F, 615.

On insurance covering damage to automobile by accident or col-
lision, see notes in 14 A L. R., 188, 26 A. L. R., 429.

Great Eastern Casualty Co. v. Solinsky.

## FROM DAVIDSON

*Headnote 1.   28 Cyc, Motor Vehicles, p. 50 (1925 Anno).

Error to the Circuit Court of Davidson County.—Hon. E. F. LANGFORD, Judge.

MANIER & CROUCH and THOS H. MALONE, for plaintiffs in error.

THOS. G. WATKINS and LOUIS LEFTWICH, for defendants in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

For a statement of the case we quote from the brief of defendants in error as follows:

"Responding to what was thought to be a signal light to stop at a railroad crossing the driver of the Cadillac Suburban automobile of defendants in error suddenly applied the brakes.   At the time of the accidental collision the machine was traveling at the rate of thirty to thirty-five miles per hour on the Nolensville Pike.   The scene of the accident was in Davidson county, but some distance outside of the corporate limits of the city of Nashville. The Nolensville Pike had been oiled and loose gravel spread upon the roadbed.

"Upon the application of the brakes the machine skidded, swerving and reversing its position.   The right rear wheel of the automobile collapsed, and the vehicle was precipitated on its right side upon the roadbed.   It was a new automobile, and at the time of the collision had been driven only about nine hundred miles.   The amount

of damages sustained by the defendants in error resulting from this collision is agreed to be $1,917.83.

"The Great Eastern Casualty Company had issued a policy to defendant in error Mrs. Solinsky, insuring her against three distinct risks; namely, first, against injuries to persons; second, injuries to property of others than hers; and, thirdly, against damage to assured's own automobile.'

"The contract of insurance was taken over by the co-plaintiff in error, Union Indemnity Company, which assumed all liability that might arise under said policy.

"The total premium charged and paid for the entire coverage was $198.73, and was specifically apportioned as follows: $40.31 was charged for insurance against damage to persons, not to exceed, however, $20,000; $12.42 was demanded for insurance against injuring property of others; and, third, $146 was exacted for insurance covering 'damage to assured's own automobile.'

"It is the third and most expensive class of coverage that is involved in this proceeding, and the language defining the risk is as follows:

" 'Damage to Assured's Own Automobile.

" 'III.   To indemnify the assured against loss by reason of damage to or destruction of any automobile described in said declarations, including its operating equipment, if caused solely by collision with another object either moving or stationary, excluding however, damage or destruction by fire from any cause whatsoever; and excluding loss or damage to any tire due to puncture, cut, gash, blow-out or other ordinary tire trouble; and excluding in any event loss or damage of any tire unless caused in an accidental collision which also causes other loss or damage to the insured automobile.' "

The defendants in error recovered a judgment in the circuit court for the sum sued for, which judgment was affirmed by the court of civil appeals.

The principal question involved is, Was the damage sustained due to a "collision" within the meaning of the policy?

The plaintiffs in error have cited seven decisions from other jurisdictions, which, in our opinion, support their contention, and which we will review in a brief manner.

The first case is that of *Bell* v. *American Insurance Co.*, 173 Wis., 533, 181 N. W., 733, 14 A. L. R., 180. This was a case in which an automobile tipped over and was damaged. The policy insured the plaintiff against damage resulting to his automobile "by being in accidental collision during the period insured with any other automobile, vehicle or object." The court said:

"With the definitions of lexicographers as a basis, it is easy to demonstrate that the incident resulting in damage to plaintiff's automobile constituted a collision. Thus: 'A collision is the "meeting and mutual striking or dashing of two or more moving bodies, or of a moving body with a stationary one." Century Dictionary. "Object" is defined to be "that which is put, or which may be regarded as put, in the way of some of the senses, something visible or tangible." Webster's Dictionary. An automobile is an object. Upon the overturning of an automobile, its forcible contact with the earth constitutes a "mutual striking or dashing of a moving body with a statutory one." Hence the forcible contact of the automobile with the earth, on the occasion of the upset, constituted a collision.'

150 Tenn.—14.

"Upon its face this appears to be good logic, but the conclusion is neither convincing nor satisfying. One instinctively withholds assent to the result. The reason is that it makes a novel and unusual use and application of the word 'collision.' We do not speak of falling bodies as colliding with the earth. In common parlance the apple falls to the ground; it does not collide with the earth. So with all falling bodies. We speak of the descent as a fall, not a collision. In popular understanding a collision does not result, we think, from the force of gravity alone. Such an application of the term lacks the support of 'widespread and frequent usage.'

"While it is true that insurance contracts should be construed most strongly against the insurer (*French* v. *Fidelity & C. Co.*, 135 Wis., 259, 17 L. R. A. [N. S.], 1011 115 N. W., 869; *Kelly* v. *Fidelity Mut. L. Ins. Co.*, 169 Wis., 274, 4 A. L. R., 845, 172 N. W., 152), yet they are subject to the same rules of construction applied to the language of any other contract. It is a fundamental rule that the language of a contract is to be accorded its popular and usual significance. It is not permissible to impute an unusual meaning to language used in a contract of insurance, any more than to the language of any other contract. The incident causing the damage to the automobile here in question is spoken of in common parlance as an upset, or 'tipover.' If it were the purpose to insure against damage resulting from such an incident, why should not such words, or words of similar import, have been used? We cannot presume that the parties to the contract intended that an upset should be construed as a collision, in the absence of a closer association of the two incidents in popular understanding."

In *New Jersey Insurance Co.* v. *Young,* 290 Fed., 155, decided by the circuit court of appeals, Ninth Circuit, June 18, 1923, the policy covered "accidental collision during the period insured with another automobile, vehicle, or object, excluding loss or damage to any tire due to puncture, . . . or other ordinary tire trouble, and excluding in any event loss or damage to any tire, unless caused in an accidental collision." The court said:

"We are unable to construe the word 'collision' as including damage caused by the striking of the car upon the roadway after the defective axle broke and let the car down. The automobile was being driven upon the highway. It did not come in contact with any object upon the road or roadway until after the defective axle broke, when the car dropped and the end of the broken axle plowed into the roadway itself, and the car, pivoting on the broken axle, turned over and was damaged. In a usual sense, an accidental collision between an automobile and another object means striking against something on the road; for instance, hitting a pedestrian, or a horse, or a cow perchance straying in the road, or a rock or stump upon the roadway, or a guard rail, such as is often placed in the road at points where repairs are being made, or where the automobile hits or rubs the side of a tunnel or embankment or bridge alongside or defining the road. In other words, we think the language of the contract, when accorded the ordinary and usual meaning that should govern, does not extend to the incident under consideration, where the proximate cause was the breaking of the defective axle, and damage was not by 'being in accidental collision' with an object."

In *Moblad* v. *Western Indemnity Company* (September, 1921), 53 Cal. App., 683, 200 Pac., 750, the indemnity clause covered injury ''caused solely by collision with another object.''

In that case, to avoid striking another car, the driver pulled out close to the edge of the roadway and the edge gave way, causing the automobile to turn over and roll down the mountain. The court said:

''In the instant case, the damage to plaintiff's car was caused proximately by its turning over on the edge of the road. Its subsequent revolutions and consequent damage were but the operation of physical laws set in motion when it turned over on the edge of the road. The proximate and only cause of the accident was not a collision, but the upsetting of the automobile.''

In *Continental Casualty Co.* v. *Paul* (April, 1923), 209 Ala., 166, 95 South., 814, the clause insured the owner from damage ''resulting solely from accidental collision of such automobile with any moving or stationary object.''

The driver of the car left it standing on a hillside. It rolled down an embankment fifty or sixty feet in height from which rocks and large lumps of ore protruded, and the damages sustained may readily and most naturally be attributed to this fall.

Denying a recovery, the court said:

''If the brakes failed to hold, and the car of its own momentum, without the application of exterior force, and simply in obedience to the law of gravity, rolled down the embankment to the bottom of this cut, we are clear to the view that the damages thus sustained would not be

the result of a collision with 'any moving or stationary object.' "

In *Ploe* v. *International Indemnity Co.* (Wash. February 21, 1924), 223 Pac., 327, the policy insured against accidental collision "with any other automobile, vehicle or object." The plaintiff alleged that the automobile skidded from the road and struck a stump standing about five feet from the side of the road and thereupon was precipitated down an embankment and was damaged and so completely wrecked by reason of said collision as to be of no value. It was held that striking the stump and the earth, after skidding from the road, were not collisions within the meaning of the policy, and that plaintiff could not recover.

In 26 A. L. R., 431, the annotator says:

"And in *London Guarantee & Acci. Co.* v. *Sowards* [1923], 2 D. L. R., 495, —, Can. S. C., —, reversing [1923], 2 D. L. R., 441, — Ont., —, where a policy provided for indemnity for damage to insured's automobile in an 'accidental . . . collision with any other automobile, vehicle, or object,' the insurer was held not liable for damage to the insured's car, sustained when it struck a rut in the road and was upset on its side and went into the ditch, since it was held that this could not be considered as a collision within the meaning of the policy."

The cases relied upon by the appellees are not directly in point, as will appear from the following brief synopsis:

In *Harris* v. *American Casualty Co.*, 83 N. J. Law, 641, 85 Atl., 194, 44 L. R. A. (N. S.), 70, Ann. Cas., 1914B, 846, the policy covered damage to any automobile "resulting

solely from collision with any moving or stationary object; [excluding however] . . . (c) damage resulting from collision due wholly or in part to upsets.''

It will thus be noted that this case is not in point, for the reason that upsets were excluded. In that case the automobile crashed through the guard rails of a bridge, and was precipitated into the stream below and seriously injured. The court held that the coming together of the automobile and the water constituted a collision.

In *Universal Service Co.* v. *American Insurance Co. of Newark, New Jersey* (March, 1920), 213 Mich., 523, 181 N. W., 1007, 14 A. L. R., 183, the policy covered loss and damage occasioned by collision. The truck, which was covered by the policy, was being loaded by means of a steam shovel. At the time of the accident the loaded scoop, while over and above the truck, fell from some unexplained reason upon the truck and seriously damaged same. The court held that there was a collision within the meaning of the policy. It will thus be observed that this was not a case of an ''upset.''

In *Wetherill* v. *Williamsburgh City Fire Insurance Co.,* 60 Pa. Super. Ct., 37, it was held that, where an automobile was driven from a street inside of a building, then halted and afterwards backed into an elevator shaft and precipitated to the floor below, the owner may recover damages for the injuries sustained to the automobile upon a policy of insurance which, by its terms, is ''extended to cover damages . . . caused by collision with any other vehicle, or with any animal or object or any obstacle placed as a barrier; or in entering or leaving any building adjacent to any roadway.''

*Stix* v. *Travelers' Indemnity Company of Hartford, Conn.,* 175 Mo. App., 171, 157 S. W., 870, is not in point. *Hardenburgh* v. *Employers' Liability Assurance Corporation,* 78 Misc. Rep., 105, 138 N. Y. Supp., 662, is not strictly an "upset," case and besides was reversed in 219 Pac., 102, the policy insured the plaintiff against in- 80 Misc. Rep., 522, 141 N. Y. Supp., 502.

In *Columbia Insurance Co.* v. *Chatterjee* (Okl. Sup.), 219 Pac. Rep., 102, the policy insured the plaintiff against injury to his automobile resulting from accidental collision. The facts were that plaintiff, in suddenly turning his automobile to the right to avoid a collision with an approaching automobile, collided with an embankment of earth, which caused the automobile to turn over and wreck itself against the embankment. The court said:

"It is immaterial that the car may turn over and be damaged, if the turnover is the result of a collision in the first instance, because the injury to the car in the turnover is as much due to the collision, though indirect, as if the upset had not occurred."

In *Gans* v. *Columbia Insurance Co.* (N. J. Sup., 1924), 123 Atl., 240, a flying boat was insured against damage "caused by collision with the earth (including land or water), or any object moving or stationary. . . ." The boat was brought to rest upon the sea for repairs. After they were made the pilot was unable to start the engine and drifted for four hours in the sea. Eventually he drifted onto the beach, upon which a fairly heavy surf was running, and the plane by force of the breakers, upon grounding on the beach, was materially damaged. The damage sustained by the wings and control surface was due to the action of the waves, after the plane drifted ashore. The insurer was held liable. This case is not an

authority for the proposition relied on in the instant case.

The last case cited by the defendants in error is that of *T. C. Power Motor Car Co.* v. *United States Fire Insurance Co.* (Mont.), which will appear in 223 Pac., 112. We have not had access to this case, which was decided by the supreme court of Montana.

From the statement contained in the brief it appears that the driver of an automobile, upon discovering a barricade in the road, turned suddenly to the right and off of the main highway and undertook to cross a ditch, and, in doing so, "the automobile ran or dropped into the same in an upright position, 'and by coming in contact with the body and banks of the ditch or wash' was wrecked, causing the damage complained of." The banks of the ditch were composed of earth, being about six feet deep and fifteen feet wide. It was held that this was a collision.

After carefully considering the case and reviewing the authorities enumerated, as well as others, we are of the opinion that the plaintiffs in error are not liable on the policy sued on herein, and that to hold otherwise would be to impute to the contract an unusual meaning and one that, in our judgment, was not contemplated by the parties. In the main the rule announced by the circuit court of appeals in *New Jersey Insurance Company* v. *Young,* supra, meets with our approval; at least, in so far as it applies to this case.

It is not necessary to determine at this time whether there is liability where an automobile leaves the roadway and comes in contact with some object, or drives through

a guard rail on a bridge and is precipitated into a stream below, or while standing in a roadway is hit by a scoop, a limb, or some object from above. These questions are not before us.

While the learned jurists, who wrote the opinions referred to herein, expressed in some instances divergent views as to the proper definition of the word "collision," we have been unable to find any direct conflict of decision under facts similar to those appearing in this case.

It has been suggested that the exclusion of punctures or injuries to tires was indicative that unexcluded contacts with road or earth causing other than tire damage were, by the parties, deemed to be within the meaning of the "collision clause." And such was the holding of the district judge in *Young* v. *New Jersey Insurance Co.*, reported in 284 Fed., 492, but this holding was reversed by the court of appeals in a decision from which we have already quoted, and impliedly, at least, his construction of the exclusion clause was held to be erroneous. Such was the holding in *Bell* v. *American Insurance Company*, supra, and *Ploe* v. *International Indemnity Co.*, supra.

As stated in *New Jersey Insurance Company* v. *Young*, supra, an accidental collision between an automobile and another object means striking against something on the road.

The thought expressed in the above cases is that the collision clause refers to some other object than the road upon which the automobile is being operated. Being already upon the road, and in contact with it, there can be no collision in the sense that the term contemplates two separated objects coming together. If the tire comes in

contact with a piece of glass, a tack, or a rock on the road, there is a collision, and it was to exclude this kind of a collision that the exception was written into the policy, and, probably, for the further purpose of preventing frivolous and vexatious litigation.

Again, it is insisted by the defendants in error that there is sufficient evidence to sustain the finding of the court of civil appeals that there was a collision with some object in the roadbed that resulted in the automobile being overturned.

The only evidence found in the record upon which this is based is that contained in the stipulation of counsel in these words:

"That the said Nolensville road on which said automobile was being then and there driven had been oiled, and also there was some loose gravel upon the surface of said roadway."

In the absence of any other evidence, we cannot say that the automobile in question collided with some object in the roadbed that caused it to swerve, the wheel to collapse, and to turn over. It will be noted from some of the cases cited herein, as well as from other authorities referred to in the briefs, that such a finding would be conjectural and speculative and not based upon any tangible or direct evidence. It is inconceivable that gravel scattered over an oiled road could come in contact with a heavy automobile in such a manner as to cause it to swerve and tip over.

From the foregoing it results that the judgment of the court of civil appeals will be reversed, and the suit dismissed, at the costs of the defendants in error.